COOK, Justice.
The defendant, Bass Pecan Company, appeals from a $529,069 default judgment in favor of the plaintiff, Mildred M. Berga. The issue is whether the trial court abused its discretion in denying Bass Pecan’s motion to set aside that default judgment. We reverse.
Mildred Berga purchased 424 pecan saplings for $3,568.50 from Bass Pecan Company in April 1983. Berga planted the saplings on approximately 40 acres of land that she owned in Baldwin County. Bass Pecan assured Berga that the pecan saplings she purchased were of the Cape Fear variety. Bass Pecan also guaranteed its trees to be “true to name, both variety and rootstock.” On. November 1, 1993, as the trees were bearing fruit for the first time, Berga discovered that the trees were not of the Cape Fear variety, but were instead of an inferior variety. Berga unsuccessfully attempted to arrange a settlement with Bass Pecan by letter correspondence.
On September 13, 1995, Berga filed a two-count complaint against Bass Pecan in the Baldwin Circuit Court, seeking compensatory and punitive damages. The first count alleged misrepresentation as to the variety of the saplings. The second count alleged breach of contract, specifically that Bass Pecan had failed to supply trees of the Cape Fear variety in accordance the April 1983 contract between Berga and Bass Pecan. Berga claimed economic value and lost profits.
On September 25, 1995, the summons and complaint were served on Kim Duncan, a secretary for Bass Pecan. She passed the summons and complaint along to Charlotte Hale, another secretary, who in turn gave them to Stanley Kemp, the sales manager for Bass Pecan. Kemp gave the complaint to Mike Eubanks, the owner of Bass Pecan. Kemp testified by deposition:
“Q. When is the next time you heard anything else about this case?
“A. When we saw the judgment.
[[Image here]]
“Q. Did you have any conversations with Mr. Eubanks after the notice of judgment came in?
“A. Yes, some.
“Q. I imagine. Tell me about those. Tell me what he said and what you said.
“A. He was surprised that it was so large. He never expected it to be that large, and I didn’t either, so—
“Q. Did you have any conversations with him about why he didn’t do anything with the complaint?
“A. Yes. I asked him why he didn’t do anything about it, and he didn’t know — he didn’t realize it would be that kind of a judgment against us....
“Q. Did you personally read the complaint when it came in?
[[Image here]]
*1313 “A. Yes, I did.
“Q. Did you see that my client was asking for both compensatory and punitive damages against Bass Pecan Company? “A. I’m sure I did.
“Q. Did you see that my client was demanding lost profits against Bass Pecan Company?
“A. If it’s in here, yes.
“Q. I know it’s in there. My question is, did you read it and did you see at the time it was received that those matters were being demanded against Bass Pecan Company?
“A. When we got it I read it, so I guess I did.
“Q. Did you ever have any conversations with Mr. Eubanks before notice of the judgment came in to the effect that, hey, you better do something about this?
“A. No.
“Q. Did /all ever have any discussions about the company retaining a lawyer? “A. No.
[[Image here]]
“Q. So what you are saying is Mr. Eu-banks got [the complaint and], as far as you know he read it?
“A. I guess.
“Q. He figured maybe if there was a judgment it wasn’t going to be big?
“A. I guess.”
(R.T. 36-41.)
Bass Pecan failed to answer the complaint. On January 17, 1996, Berga filed an application for a default judgment. The application stated that service had been perfected on September 25,1995, and that Bass Pecan had failed to plead or otherwise defend the action. Berga requested a hearing in order to present testimony and other evidence in support of her claim for damages. On January 18, 1996, a default was entered against Bass Pecan. On March 19, 1996, the trial court conducted a hearing pursuant to Rule 55(b)(2), Ala.R.Civ.P., to determine damages; the court then entered a default judgment in the amount of $529,069.
On March 19, 1996, the court entered the following order:
“This action came on the motion of the Plaintiff for a default judgment against the Defendant Bass Pecan Company pursuant to Rule 55(b)(2) of the Alabama Rules of Civil Procedure, and said Defendant having been duly served with the summons and complaint and not being an infant or unrepresented incompetent person and having failed to plead or otherwise defend, and its default having been duly entered and said Defendant having taken no proceedings since such default was entered, and a hearing having been conducted by the Court on March 19, 1996, to consider Plaintiffs application for a[n] entry of default judgment against defendant Bass Pecan Company, and to further consider the amount of damages, if any, to which Plaintiff is entitled under the allegations contained in her complaint; ... it is, therefore, ORDERED, ADJUDGED, and DECREED as follows:
“1. That a default judgment be and the same is hereby entered in favor of the plaintiff, Mildred M. Berga, and against the defendant, Bass Pecan Company, on each of the causes of action as set forth in Plaintiff’s complaint against said Defendant.
“2. That the Court hereby awards damages to the plaintiff, Mildred M. Berga, on the default judgment hereby entered by the Court, in the amount of $529,069.”
On April 15, 1996, Bass Pecan filed a Rule 55(e), Ala.R.Civ.P., motion to set aside the default judgment. The court denied the motion, stating:
“The court having determined from argument and the exhibits that there is no statute of limitations defense, the plaintiff would suffer prejudice due to her advanced age, and the fact that the defendant’s agent intentionally disregarded this court’s judicial process and the letter plaintiff’s counsel sent him, the court denies the motion to set aside the default judgment.”
Bass Pecan appealed.
Bass Pecan argues that the judgment entered by the trial court is contrary to Rule 54(c), Ala.R.Civ.P., because, it contends, the *1314 amount of the default judgment exceeded the prayer for relief in the complaint and because Berga purchased pecan saplings for $3,568.50 and the complaint did not specify damages in excess of that amount. “If the default judgment was properly [entered], the trial court has great discretion in deciding whether to grant relief from the judgment, and the trial court’s decision will not be disturbed on appeal absent an abuse of discretion.” J & P Constr. Co. v. Valta Constr. Co., 452 So.2d 857, 859 (Ala.1984), citing Roberts v. Wettlin, 431 So.2d 524 (Ala.1983), and Elliott v. Stephens, 399 So.2d 240 (Ala.1981).
Rule 54(c), Ala.R.Civ.P. mandates that a default judgment be limited to the relief demanded in the complaint.[1] In the first count, stating a cause of action for misrepresentation, Berga prayed for “the entry of judgment against Defendant for compensatory and punitive damages in an amount within the jurisdiction of this Court.” In her second count, stating a cause of action for breach of contract, Berga prayed for “compensatory damages in an amount within the jurisdiction of this Court.” After viewing the complaint, we hold that, according to the present rules of notice pleading, it sufficiently informed Bass Pecan that Bass Pecan was being sued for misrepresentation and breach of contract and that damages could be awarded at the discretion of the court.
Although Berga could have specified an amount of damages sought, to do so was not mandatory. Rule 55(b)(1) provides:
“When the plaintiffs claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and if the defendant is not a minor or incompetent person.”
(Emphasis added.) Rule 55(b)(2) provides:
“If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury pursuant to the provisions of Rule 38.”
(Emphasis added.)
We conclude that the entry of default was properly made by the clerk under Ala. R.Civ.P. 55(a) and that Rule 54(c) was not violated.
Pursuant to Rule 55(b)(1), for a court to enter a default judgment, the amount of the claim against the defendant need not be a sum certain, if the amount can be computed to be made certain. On March 19, 1996, the trial court held a hearing to determine the amount of damages to award. Frances Ber-ga Rigsby, the daughter of Mildred Berga, testified as follows:
“Q. Okay. Let’s start with the initial cost of the trees. What was the cost of the trees themselves?
“A. The initial cost of the trees was $3,940.[2] I have the original invoice.
“Q. You heard your husband’s testimony about expenses that have gone into these trees for the first, I believe, ten years or so after they were planted?
“A. Yes sir.
“Q. What is that figure?
“A. $10,000 a year.
“Q. I believe it’s actually $10,800 a year; is it not?
“A. Yes, $10,800.
[[Image here]]
“Q. What’s that total cost figure?
“A. 1,000 — $132,300. That’s fertilized], that’s spray; which the price of spray went up considerably since this figure was given to us.
[[Image here]]
*1315 “Q. All right. Have you made a calculation of the amount of profits that Cape Fear variety pecans should have produced over the past six years?
“MR. BLACKBURN: Your Honor, the reason I’m saying six years is because these trees got to maturity approximately six years ago and began to bear fruit.[3] “THE WITNESS: Okay. At 50 pounds per tree on 424 trees, a profit over six years would have been $127,200.
[[Image here]]
“Q. All right. And that’s — you said $127,000—
“A. 200.
“Q. —$200. Now that’s your total revenue? That’s not your profit?
“A. Yes sir.
“Q. Right. And you’re still gonna have annual costs of about how much per year in maintenance?
“A. $10,000. That’s just ballpark.
“Q. So for a six-year period, we need to subtract $60,000—
“A. Yes, sir.
“Q. —in expenses, which leaves us with profit of $67,200?
“A. Yes, sir.
“Q. For the period of 1990 through 1996? “A. Yes, sir.
“A. Have you also made an estimate of what these trees could produce for the— for the next six-year period?
“A. Yes, sir. As mature trees of the. Cape Fear variety, which are considered a prime nut because of their golden color, their flavor and their marketability, these mature trees would give us about a hundred pounds per tree, and they would — it would bring a price of a dollar fifty. That is what they were getting in Georgia this last year when they had a good crop.
“Q. That comes to total annual revenues?
“A 300 over—
“Q. Well, per year, that’s $63,600?
“A Yes, sir.
“Q. Times six years is $381,600?
“A. Yes, sir.
“Q. And again, that’s gross revenue?
“A. Yes, sir.
“Q. From which we subtract 60,000 in
expenses?
“A. Yes, sir, which is optimistic.
“Q. Leaving 388 — I’m sorry — 321?
“A. 6.
“Q. Let’s put it up here. $321,600.
“A Uh-huh.
“Q. For a total of $524,069?
“A Yes, sir.”
(C.R. 8-12.)
Athough the clerk properly made the entry of default under Aa.R.Civ.P. 55(a), the default judgment was not properly entered by the court. The evidence at the default judgment hearing on March 19,1996, did not support an award of $529,069. For example, the expenses incurred in maintaining the trees were calculated as part of the damages; however, if the plaintiff had received exactly what she ordered, that is, the Cape Fear variety, she still would have incurred the same amount of expenses. For these reasons, the trial court should hold a new hearing on damages, and at that hearing the trial court may take additional testimony.
Bass Pecan also argues that both counts of the plaintiffs complaint were barred by the applicable statutes of limitations. Aa.Code 1975, § 7-2-725(1), provides that “[a]n action for breach of any contract for sale must be commenced. within four years after the cause of action has accrued.” The statute of limitations on a contract action runs from the time a breach occurs rather than from the time actual damage is sustained. AC, Inc. v. Baker, 622 So.2d 331 (Aa.1993). An action for misrepresentation must be commenced within two years. § 6-2-38(Z), Aa.Code 1975. The misrepresentation in this case was discovered on November 1, 1993, when the trees were bearing pecans for the first time and the plaintiff learned that the pecans were not of the Cape Fear vari *1316 ety. Arguably, even if Bass Pecan could assert a valid defense on the breach of contract claim, it does not have a meritorious defense on the misrepresentation claim. Therefore, the trial court properly entered judgment for Berga.
We reverse the default judgment and remand the case for a hearing to determine the proper amount of damages.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, and SEE, JJ., concur.
BUTTS, J., concurs in the result.

. In pertinent part, Rule 54(c) reads: “Demand for Judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.”

. According to the complaint, the initial cost of the pecan trees was $3,568.50.

. We interpret this statement to mean that the trees, if they had been of the Cape Fear variety, should have begun bearing fruit in approximately 1990. It is undisputed that the trees actually began bearing fruit in 1993.